No. 30,826.

GRACE TORRANCE CLARK, Administratrix with the Will Annexed of the Estate of Thomas S. Moffett, Deceased, and LOUISE MC-GREW MOFFETT, *Appellants*, v. HELEN MOFFETT et al. (THE COMMERCE TRUST COMPANY, Executor de bonis non of the Estate of John Moffett, Deceased, the COMMERCE TRUST COMPANY, Administrator of the Estate of Moffett Brothers, and R. O. ROBBINS, Administrator with the Will Annexed of John Moffett, Deceased, Interveners), *Appellees.*

(18 P. 2d 555.)

Opinion filed January 28, 1933.

*E. C. Wilcox,* of Anthony, *A. E. Watson,* of Shawnee, and *Martin J. O'Donnell,* of Kansas City, Mo., for the appellants.

*Guy O. Neal,* of Anthony, *Orlin A. Weede, B. C. Howard, Glen A. Wisdom,* all of Kansas City, Mo., *H. A. Wilkinson, James R. Eagleton* and *S. A. Horton,* all of Oklahoma City, Okla., for the appellees.

*R. O. Robbins,* of Sedan, *pro se.*

The opinion of the court was delivered by

HARVEY, J.: The partnership of Moffett Brothers, composed of John Moffett and Thomas S. Moffett, was dissolved by the death of John Moffett, August 23, 1927. John Moffett left a will, which, after making specific bequests, left the residue of his property to certain relatives. His widow elected to take under the law. The partnership owned a large amount of real property situated in several counties in Kansas and in Missouri. On August 15, 1929, the general debts of the partnership having been paid, Thomas S. Moffett brought this action to partition the Kansas land belonging to the partnership. The defendants named were the widow of John Moffett and the devisees under his will. John and Thomas S. Moffett were also in partnership with their brothers, Renwick J. Moffett and Joseph W. Moffett, under the firm name of Moffett Brothers Cattle, Land and Lumber Company. The business of this partnership was conducted principally in Oklahoma. Renwick J. and Joseph W. Moffett were beneficiaries under the will of John Moffett and were made parties defendant in the partition action. Helen Moffett, the widow of John Moffett, answered in the partition action, conceding that the lands should be partitioned, but alleged that the partnership of Moffett Brothers was indebted to John Moffett individually, that Thomas S. Moffett individually was indebted to the partnership of Moffett Brothers, and that the Moffett Brothers Cattle, Land and Lumber Company was indebted to the partnership of Moffett Brothers. These matters were set up in a cross petition, and she asked that an accounting be had of such

indebtedness, and the sums, if any, found to be due taken into consideration in determining the shares of interest of the respective parties in the land to be partitioned. The Commerce Trust Company, in its dual capacity of executor *de bonis non* of the will and estate of John Moffett and as administrator of the partnership estate of Moffett Brothers, by leave of court intervened in the action, and it and other defendants sought an accounting and partition. The action came to this court on the pleadings (*Moffett v. Moffett,* 131 Kan. 582, 292 Pac. 947), where it was determined that the accounting prayed for was proper.

When the action went back to the trial court, broadly speaking, the only controversy between the parties was with respect to the accounting. The will of John Moffett had been construed as it affected some of the beneficiaries, both by this court (*Moffett v. Moffett,* 131 Kan. 546, 292 Pac. 942) and by the supreme court of Missouri (*Zombro v. Moffett,* [Mo.] 44 S. W. 2d 149). There was no longer any controversy among the parties as to the share or interest which each of them should receive in the land to be partitioned except as the same might be modified by the accounting.

Broadly speaking, there were but three things to be determined in the accounting. *First,* were Moffett Brothers indebted to John Moffett individually at the time of his death, and if so, in what sum? *Second,* was Thomas S. Moffett indebted to the partnership of Moffett Brothers, and if so, in what sum? And *third,* was the Moffett Brothers Cattle, Land and Lumber Company indebted to Moffett Brothers, and if so, in what sum?

After hearing the evidence the trial court made exhaustive findings of fact, and found, on accounting to the date of October 31, 1931, that the estate of Moffett Brothers was indebted to the estate of John Moffett in the sum of $143,829.96; that the estate of Thomas S. Moffett (he having died after the action was brought) was indebted to the estate of Moffett Brothers in the sum of $27,399.25, and that Moffett Brothers Cattle, Land and Lumber Company was indebted to the estate of Moffett Brothers in the sum of $101,228.06. The court rendered judgment in accordance with these findings. The present appeal is by plaintiffs from this judgment and the findings on which it was based. On this appeal, broadly speaking, no question is raised as to the amount found by the trial court to be due from Moffett Brothers Cattle, Land and Lumber Company to the estate of Moffett Brothers. Neither is there any question raised as

to the amount found by the trial court to be due from the estate of Thomas S. Moffett to the estate of Moffett Brothers. The only major question over which any controversy is presented by this appeal relates to the correctness of the trial court's finding that the partnership of Moffett Brothers was indebted to the estate of John Moffett in the sum of $143,829.96. With respect to that, broadly speaking, appellants make two contentions. *First*, that the evidence does not support the findings of the trial court; but, coupled with this is the contention that the court received incompetent evidence on that point; and, *second*, that the court erred in computing and including interest on the amount of the indebtedness of Moffett Brothers to John Moffett individually.

This controversy, so comparatively simple in its broader aspects, as above outlined, has been complicated by the manner in which the litigation has been conducted by injecting into it a number of questions relating to practice or procedure and technical questions, many of which have little or no substantial merit, with the result that the parties have presented to this court for its analysis and its consideration 1740 pages of printed abstracts and briefs. Notwithstanding the extraordinary and wholly unnecessary bulk of the matter presented, we have endeavored to go through it carefully and painstakingly, and have done so as fully as our time would permit, and will treat and dispose of all the questions presented that have any semblance of merit.

We shall take up, first, the principal question presented by this appeal. Does the evidence sustain the finding that Moffett Brothers was indebted to John Moffett? On this point the evidence may be summarized as follows: John Moffett and Thomas S. Moffett resided at Kansas City, Mo. They were equal partners in the firm of Moffett Brothers. When this partnership was formed is not definitely shown, but it had existed a long time, perhaps thirty years or more, when it was dissolved by the death of John Moffett. It was engaged in the ranching and live-stock business and owned and operated a number of farms and ranches and had offices in the Livestock Exchange Building at Kansas City. John Moffett spent most of his time at the office, where they had bookkeepers and other clerical help. Thomas S. Moffett spent most of his time looking after the farms and ranches and the live stock thereon, going back and forth from the office to the various ranches. Each of them had property owned individually. Both of them were members of the

partnership firm of Moffett Brothers Cattle, Land and Lumber Company, which was engaged in the live-stock, land and lumber business in Oklahoma, the field work being looked after by the Oklahoma brothers, but the office business transacted at the Kansas City office. Both John and Thomas S. Moffett were members of a partnership known as Moffett Brothers & Andrews, which was also engaged in the live-stock business. One or both of them were interested as members or otherwise in four other partnerships, namely, Andrews, Lewis & Moffett, Andrews & Lewis, J. C. Lewis & Co., and Andrews & Moffett. The books of all these partnerships and of the personal business of John Moffett, and perhaps the personal business of Thomas S. Moffett, were kept in the one office at Kansas City and by the same office force. Collectively they transacted a large volume of business, amounting to many thousands of dollars each year. While notations or entries were made to identify the business of each of the partnerships or individuals, it was all entered in a common ledger which bore the name of "Moffett Brothers & Andrews Ledger." About 1924 they had a firm of accountants examine these books and open a separate set of books for the partnership of Moffett Brothers. Separate books were also opened for the partnership of Moffett Brothers Cattle, Land and Lumber Company. Separate books were opened for some, perhaps all, of the other partnerships, but that is not material here. The business of the partnership of Moffett Brothers thereafter was kept in the books of that firm until the death of John Moffett, and thereafter to the time of the trial of this action. These books were in court at the trial, and the entries in them, the testimony concerning some of those entries, and a summary of them prepared by accountants, known in this record as "Commerce Trust Company Exhibit No. 8," constituted the evidence on which this finding was based. This evidence shows this indebtedness exactly as found by the court, hence there is no lack of evidence to sustain the finding.

Appellants complain because the court received in evidence the summary of the books made by the accountants, "Commerce Trust Company Exhibit No. 8," and contend that it was incompetent and hearsay, and they contend that without it the evidence was insufficient. Naturally the original books were voluminous. They had been brought to the court in large boxes and trunks. They had been in possession of the plaintiffs, who had helped keep the books in recent years and were familiar with them. It was appropriate

for a summary to be made by some one from them, collecting and properly setting down the entries or items bearing upon the controverted issues to be determined by the court. The trial court admitted this summary in evidence as informative only and not conclusive, and permitted the parties to refer to the original books as much as they desired and gave them ample time to do so. All other evidence relating to this indebtedness, the books and entries therein which either party offered, was received by the court. There is no contention now that this summary was not an appropriate and accurate one compiled from the books of the partnership. There was no error in receiving it in evidence.

Appellants complain that the sum found due from Moffett Brothers to John Moffett individually includes interest on sums the partnership owed John Moffett. The court found there was an agreement between John and Thomas S. Moffett that interest should be paid on such sums. Appellants contend there is no evidence to show such an agreement, and that the allowance of interest was not justified. On this point the evidence was substantially as follows: The various partnerships and individuals doing business from a common office and keeping the record of their business in a common set of books, and all engaged in the same general line of business, frequently had occasion to borrow money in substantial sums. Sometimes these loans were made from banks; sometimes they were made from one of the other partnerships or individuals having money on hand which could be used for that purpose. The books disclosed these various loans, and always computation of interest on them. This had been done for all the years as far back as the books were examined for that purpose. There was testimony that John Moffett and Thomas S. Moffett frequently discussed in the office these various loans, the interest which should be charged by reason of them, and the entries made showing such interest charges. The books clearly show that John Moffett's individual money, sometimes in large amounts, was used by Moffett Brothers, appropriate entries being made in the books, and that he was credited with interest from time to time. At the time of his death the books of Moffett Brothers showed an indebtedness to John Moffett. A substantial part of that amount, perhaps a fourth of it, was interest which had been credited to his account from time to time. Thomas S. Moffett undertook to administer the estate of the Moffett Brothers partnership as surviving partner under the common law, and in

doing so took charge of the books and made, or caused to be made, additional entries therein crediting interest, and made payments from the estate of Moffett Brothers to the personal representative of the estate of John Moffett from time to time. From all of this the court was justified in finding that there was an understanding and agreement between John Moffett and Thomas S. Moffett by which interest should be credited and paid by Moffett Brothers to John Moffett on sums which he advanced individually to the partnership.

While on this question of interest we shall dispose of the question argued of interest on the indebtedness of the partnership of Moffett Brothers Cattle, Land and Lumber Company to the partnership of Moffett Brothers. The trial court did not allow interest on that indebtedness, although the books kept at Kansas City showed interest was computed thereon and added to the account. The evidence on this point was that this partnership was composed of the four brothers; that by its terms when formed, the two brothers, Renwick J. Moffett and Joseph W. Moffett, were to devote their time to the business in Oklahoma, the other two brothers, John Moffett and Thomas S. Moffett, were to furnish the money to finance it, and that they were to own, in equal shares, the property of the partnership in Oklahoma, and that there was no agreement among them that interest would be charged on the money so furnished. Renwick J. Moffett and Joseph W. Moffett were not at Kansas City often. They had nothing to do with keeping the books there, their attention at no time was called to the fact that on those books interest was charged to them for money advanced in the business, hence the court charged that partnership only with the money advanced by John Moffett and Thomas S. Moffett, doing business as Moffett Brothers. No serious complaint is made by anyone on this appeal of that ruling, but appellants argue that the trial court was inconsistent in charging Moffett Brothers with interest on the money advanced to it by John Moffett, and not charging interest to the Moffett Brothers Cattle, Land and Lumber Company for moneys advanced to it by John and Thomas S. Moffett, doing business as Moffett Brothers. There is no inconsistency in the court's rulings on those matters, for the one was based upon an agreement and understanding that interest would be charged and paid, and the other based upon a partnership formed with an understanding that interest would not be charged. In other words, the court's findings

are based upon the agreements as shown by the evidence, and are fully borne out by the evidence.

Appellants present another argument as to why interest should not have been included in the amount which the court found to be due from Moffett Brothers to John Moffett, personally. Prior to 1924, in making out their income-tax returns to the federal government, John and Thomas S. Moffett had not furnished to the internal revenue collector statements of their partnership transaction and with the source of income therefrom. Their attention was called to that by the internal revenue collector and a request made that the partnership transactions be shown in their returns. Perhaps that is the reason they called in accountants and had separate books made up for the partnership business of Moffett Brothers and other partnerships in which they were interested. When these books of the partnership of Moffett Brothers were made up by the accountants they showed a sum due from the partnership to John Moffett, personally, and that a part of the sum consisted of interest accumulations. Because these interest items had been credited to John Moffett on the books of Moffett Brothers, and the books did not show they had been paid, it was deemed proper to omit them from the reports furnished the government until they were paid. There is evidence tending to show that was the appropriate method of making that report. So, the informative statement respecting the partnership required by the internal revenue department to accompany the income-tax-return statement made by John Moffett and by Thomas S. Moffett, individually, was made omitting all items of interest charges which had not been paid. Appellants attempt to make much out of this. They say John Moffett and his personal representative are estopped from claiming interest; that this statement so furnished the government amounted to an admission in pleadings and is an adjudication on the question of interest; that there is a collateral attack, and that the parties now claiming interest came into court with unclean hands. We have carefully considered all appellants have said in this connection and conclude that it has no bearing at all upon the question of whether there was an agreement between John Moffett and Thomas S. Moffett that Moffett Brothers would pay interest on sums to individual members loaned from their private funds for the partnership business. These partnership statements, requested by the federal government in connection with internal revenue reports of individuals,

are requested and furnished for the information of the federal government as to the source of income of the individual taxpayers. Whether accurate or inaccurate, they do not increase or diminish the amount of tax to be paid by the taxpayer. There is no basis in the evidence for the thought that either John Moffett or Thomas S. Moffett desired to defraud the federal government in any respect in making out these tax returns or the informative partnership statements. They were advised that the proper way to make this partnership statement was to omit interest items which had been credited or charged but which had not been paid. There is nothing in the evidence from which the court could have found that by doing so they were agreeing, as between themselves, to abandon the practice and agreement theretofore existing between them with respect to these interest charges.

It is interesting to note in this argument over interest that Thomas S. Moffett was indebted to Moffett Brothers for partnership moneys which he had used in his private business. Interest charges were made on the books against him on those items and are included in the amount found due the estate of Moffett Brothers from the estate of Thomas S. Moffett, and although one of the appellants here is the sole beneficiary under his will, no complaint is made that he is charged interest on the amount he owed. We approve the finding of the trial court with respect to all of these interest items.

Appellants question findings of the court with respect to a few of the specific items which entered into the accounting. They also objected to some of the findings of fact made by the trial court and requested additional findings which the court did not make. We have carefully examined the contentions of appellants respecting these matters and find them not to be well taken. It would serve no useful purpose to state and analyze them in detail.

Passing now to some of the other questions argued. It is argued that the claim of the personal representative of the estate of John Moffett against the estate of Moffett Brothers is barred both by the statute of nonclaim and the statute of limitation, both of Kansas and Missouri. Passing the fact that it appears this claim was timely filed in the probate court, both in Missouri and in Kansas, as found by the trial court, there are two reasons why this contention has no merit. *First*, the failure to file a claim within the time of a nonclaim statute of another state does not preclude a party from establishing that claim in an appropriate action in this state. (*Toner*

*v. Conqueror Trust Co.*, 131 Kan. 651, 293 Pac. 745.) *Second*, neither the statute of nonclaim (*Carr v. Catlin*, 13 Kan. 393, 407) nor the statute of limitation is available to one of the parties to bar an appropriate accounting of a partnership before the amount due, as between the parties, is ascertained. (*Finley v. Gilmore*, 107 Kan. 349, 191 Pac. 256.)

Appellants contend that the Commerce Trust Company is without capacity to represent the Moffett Brothers partnership in this action. When the case was in this court before, one of the points determined was that it was proper for the trial court to permit the Commerce Trust Company to intervene in this action in its capacity as administrator of the partnership estate of Moffett Brothers. Ignoring the former determination of this question, appellants present two reasons in support of their contention. *First*, that the appointment was made by one who assumed to act as special judge, or judge *pro tem.*, of the brobate court of Jackson county, Missouri, who was not so chosen in accordance with the constitution and statutes of Missouri, therefore his order making the appointment is void. The trial court found that his selection was made in accordance with the constitution and statutes of Missouri, as interpreted by the supreme court of that state. The finding appears to be sound. But, passing that, he was there acting as judge of the probate court and did make the appointment. No appeal has been taken from that order. The Commerce Trust Company has been acting under the appointment since December 28, 1928. He was at least a judge *de facto*. The regularity of his appointment, or his acts as judge, cannot be collaterally attacked in this proceeding. (*Briggs v. Voss*, 73 Kan. 418, 85 Pac. 571; *Keys v. Keys*, 83 Kan. 92, 109 Pac. 985.) *Second*, it is argued that even if the appointment of the Commerce Trust Company in that capacity was made, it was for Missouri only and did not authorize it to appear in Kansas. Our statute (R. S. 22-1308) authorizes an administrator of another state to sue or be sued in this state. There is no reason for having two or more persons appearing as an administrator of the partnership estate of Moffett Brothers in this action. Certainly it should not be permitted unless one is ancillary to the other and they act in harmony. If they attempted to act in conflict with each other it was proper for the trial court to recognize in this action the Commerce Trust Company as the administrator of the partnership estate of Moffett Brothers and make its orders accordingly.

Appellants contend that the court erred in reviving this action on the death of the plaintiff. The record discloses that Thomas S. Moffett, who brought the action as plaintiff, died December 22, 1930, testate; that his widow, Louise McGrew Moffett, is sole beneficiary under his will. The will was duly probated in the probate court of Jackson county, Missouri, and his widow was named as executrix. Grace Torrance Clark was appointed administratrix with the will annexed of the estate of Thomas S. Moffett by the probate court of Wyandotte county, Kansas. Helen Moffett, the defendant and cross petitioner in this action, filed therein a motion to revive the action in the name of Louise McGrew Moffett, sole beneficiary under the will of Thomas S. Moffett, and in the name of Grace Torrance Clark as administratrix with the will annexed. Notice was served upon them that the motion to revive would come on for hearing before the court on February 6, 1931. On February 5, 1931, Louise McGrew Moffett, individually and as executrix of the estate of Thomas S. Moffett, deceased, and Grace Torrance Clark, as administratrix with the will annexed, filed an action in the circuit court of Jackson county, Missouri, and procured a temporary order restraining the defendants in this action from reviving it. This restraining order was served upon the attorneys of Helen Moffett. On February 6, when the motion to revive came up in the trial court, counsel representing Helen Moffett, who had been served with the restraining order, advised the court of the fact that the restraining order had been served upon him and of its contents. Counsel, who had previously appeared for plaintiff, announced he was appearing simply for other attorneys for plaintiff and questioned the jurisdiction of the court to proceed. He later stated he was appearing for Louise McGrew Moffett. The court inquired what objections there were to the reviver, found no substantial objections were presented, observed it was the duty of the court under the statute (R. S. 60-3211, 60-3212) to make the order if no valid objections were presented, and made an order reviving the action in the name of Grace Torrance Clark, administratrix with the will annexed of the estate of Thomas S. Moffett, deceased, and Louise McGrew Moffett, sole beneficiary of the will of Thomas S. Moffett, deceased. There is no error in this ruling.

Thereafter Louise McGrew Moffett filed a petition for removal to the federal court of what was alleged to be a separable contro-

versy between herself and the defendants Renwick J. Moffett and Joseph W. Moffett with respect to the indebtedness of the estate of Moffett Brothers to the estate of John Moffett, and alleging diverse citizenship. When this was presented to the trial court it refused to order a removal of the cause. A transcript of the proceedings was duly filed in the United States district court. That court, after a hearing, ordered it to be remanded to the state court. There was, of course, no separable controversy between Louise McGrew Moffett on the one hand and Renwick J. Moffett and Joseph W. Moffett on the other with respect to the indebtedness of Moffett Brothers to the estate of John Moffett. That is a matter in which Helen Moffett and others who were parties to the partition action were interested. This was shown by pleadings on file with the court. Thomas S. Moffett had not attempted to remove this case when pleadings raising those issues were first filed. There was no error in the ruling of the trial court on this point.

Since the order of reviver, and since the attempted removal, plaintiffs, by leave of court, filed revised and amended pleadings on which the action was fully tried. The contentions made on these matters had no merit in their inception and now have less merit (if that is possible), since the action has been fully tried on revised pleadings subsequently filed.

Appellants contend the court erred in the scope of its decree: (1) By considering property situated in other states and adjudging the rights of the parties to this action with respect thereto. This was done only with respect to property conceded to be a part of the assets of the partnership of Moffett Brothers, and was necessary to a full accounting to determine the shares or interest of the parties to this action in the Kansas land sought to be partitioned herein. That the court had authority to do so, and that this is a proper case for the court to exercise such authority, was determined on the former appeal. (*Moffett v. Moffett,* 131 Kan. 582, 588, 292 Pac. 947.) More than that, with the equities among the parties determined by the accounting adjusted out of the Kansas properties, there is no controversy among the parties as to their respective shares to the real property situated in other states. (2) In taking. to itself authority which is tantamount to the administration of the estates of the partnership of Moffett Brothers and of John Moffett and of Thomas S. Moffett, to the exclusion of and superseding the probate court of Jackson county, Missouri, and the probate courts of two

or more counties in Kansas, where steps have been taken for the administration of one or more of those estates. The decree of the court is not open to this objection. The court did this only to the extent necessary to the accounting and partition, and to that extent it was proper to do so. Neither can we see that the decree in this respect operates to the detriment of any one. The personal representative of Moffett Brothers; the heirs, devisees and personal representatives of John Moffett; the sole beneficiary of the will of Thomas S. Moffett, and his Kansas personal representative, are parties to the action and bound by the decree. Indeed, it is to the advantage of the parties to have all questions relating to the accounting and partition before the court settled once and for all in one court having general jurisdiction and having power and authority to hear and determine the matter. There are no general creditors of the estate of Moffett Brothers, nor of the estate of John Moffett. We are not advised whether there are general creditors of the estate of Thomas S. Moffett, other than his indebtedness to the estate of Moffett Brothers adjudicated in this action. If there are such, we do not understand the decree of the court to prevent them from filing their claims in the probate court of Jackson county, Missouri, in the estate of Thomas S. Moffett. But since no specific question relating to that point is before us, we do not decide it. At times it is unfortunate that in this state important orders may be made by a probate court without notice to other interested parties and an opportunity for them to be heard. The probate courts have authority to require notice, but too frequently it is not done. Some such orders had been made in the early stages of the estates above mentioned, resulting in confusion, if not in serious detriment. The decree of the trial court will avoid such orders and will aid in the prompt and orderly determination of the rights of the parties.

Finally it is contended plaintiffs did not have a fair trial, and that this is indicated by rulings and remarks of the court as the trial progressed. We have carefully examined the record and all counsel have said on this point and find the contention to be devoid of merit. As before stated, the parties were in agreement as to the shares of the parties in the real property to be partitioned, except as they might be modified by an accounting. The accounting involved (1) the amount the Moffett Brothers Cattle, Land and Lumber Company owed Moffett Brothers; (2) the amount Thomas S. Moffett owed Moffett Brothers; and (3) the amount Moffett Brothers

owed John Moffett. As to the first two of these three items, while the amounts had to be ascertained, they presented no serious controversy. The parties appear to be satisfied with the judgment concerning them. They are involved in this appeal incidentally only. The third item is the one around which the battle of the trial raged. Much feeling was displayed. What caused this, or who is to blame for it, we shall not pause to consider, if, indeed, the record discloses. Perhaps because of it many contentions were made which were not well founded. Some tactics were indulged in, the obvious purposes of which were to impede rather than to aid the orderly administration of justice. With this attitude prevalent it is fortunate that the trial was before an able and experienced trial judge who could winnow the wheat from the chaff. While doing so the court gave the parties ample time for trial and a fair opportunity in the introduction of evidence. The judgment is fully sustained by the evidence, and, as we view it, in its main features, at least, is the only one which properly could have been reached from the evidence.

The judgment is affirmed.

THIELE, J., not participating.